MOYERS BROTHERS ET AL *v.* NERO POE

5-5439                                  462 S. W. 2d 862

Opinion delivered February 8, 1971

*Riddick Riffel* and *Robert Law,* for appellants.

*James M. Barker,* for appellee.

J. FRED JONES, Justice. This is a workmen's compensation case in which the employer, Moyers Brothers, and the compensation insurance carrier, appeal from a judgment of the Ashley County Circuit Court which affirmed an order of the Workmen's Compensation Commission awarding to the claimant employee, Nero Poe, compensation based on a 60% permanent partial disability apportioned to his body as a whole.

The facts are briefly these: On November 14, 1967, the appellee claimant, Nero Poe, while loading a pulpwood truck in the course of his employment for the appellants, Moyers Brothers, fell from the truck and sustained a compensable injury to his left arm resulting in a permanent partial disability to the left arm below the elbow. Upon medical release following this injury, he returned to work cutting timber with a chain saw for the same employer. On March 20, 1968, the first day he attempted to work following his release, he lost control of the chain saw and sustained a severe laceration to his right arm, resulting in a permanent partial disability to his right arm below the elbow. He filed a claim for permanent and total disability to his body as a whole as a result of the combined injuries.

The referee found that Poe had sustained a 25% permanent partial disability (loss in the use) of the left arm below the elbow, and the appellants accepted, by failure to controvert, a 50% permanent partial disability to the right arm below the elbow. As a result of the combined injuries, the referee found that Poe was totally disabled and awarded 100% permanent partial disability to the body as a whole. Following a review by the full Commission, the Commission reduced the award of the

referee and entered its finding of fact No. 7 as follows:

"That as a result of his March 20, 1968, accidental injury superimposed upon his November 14, 1967, injury, claimant has sustained a 60 per cent permanent partial disability to the body as a whole."

As a part of its conclusions, the Commission states in its opinion as follows:

"Although the Commission is unable to agree with the Referee's finding that claimant is permanently and totally disabled, we concluded from all of the evidence that claimant's March 20, 1968, injury clearly reduced his wage earning capacity in view of his prior injury on November 14, 1967. While the physical impairment resulting from the March 20, 1968, injury was not of great magnitude, its impact upon reducing claimant's wage earning capacity was great, thus producing a great degree of disability."

That part of the Commission's award which is questioned on this appeal is as follows:

"Beginning October 2, 1968, and continuing for a period of 37½ weeks, respondents shall pay to claimant compensation at the weekly rate of $38.50 for a 25 per cent loss of use of his left arm below the elbow; further, at the end of the foregoing period, respondents shall pay to claimant compensation at the same weekly rate and continuing for a period of 270 weeks for a 60 per cent permanent partial disability to the body as a whole."

On appeal to the Ashley County Circuit Court the order and award of the Commission were affirmed, and Moyers Brothers and the compensation insurance carrier have appealed to this court. They rely on the following points for reversal:

"The finding by the Commission that the claimant —appellee in this case, sustained a sixty (60%) per cent permanent partial disability to the body as a whole is contrary to the applicable statutory provisions.

There is no substantial evidence to support the Commission's finding that appellee is disabled to the extent of sixty (60%) per cent permanent partial disability to the body as a whole."

The precise question squarely presented on this appeal is whether an injury scheduled under the statute, Ark. Stat. Ann. § 81-1313 (c) (Repl. 1960) may properly be apportioned to the body as a whole in determining the extent of permanent *partial* disability. We agree with the appellants that it cannot. The pertinent section and subsections of the statute, § 81-1313, we are dealing with are as follows:

"Compensation for disability. The money allowance payable to an injured employee for disability shall be as follows:

(a) Total Disability: In case of total disability there shall be paid to the injured employee during the continuance of such total disability sixty-five per centum [65%] of his average weekly wage. Loss of both hands, or both arms, or both legs, or both eyes, or of any two [2] thereof shall, in the absence of clear and convincing proof to the contrary, constitute permanent total disability. In all other cases, permanent total disability shall be determined in accordance with the facts.

(c) Scheduled permanent injuries: An employee who sustains a permanent injury scheduled in this subsection shall receive, in addition to compensation for the healing period, sixty-five per centum [65%] of his average weekly wage for that period of time set out in the following schedule:

(1) Arm amputated at the elbow, or between the elbow and shoulder, two hundred [200] weeks;

(2) Arm amputated between below the elbow and wrist, one hundred fifty [150] weeks;

\* \* \*

(5) Hand amputated, one hundred fifty [150] weeks;

(21) Total loss of use: Compensation for permanent total loss of use of a member shall be the same as for amputation of the member;

(22) Partial loss or partial loss of use: Compensation for permanent partial loss or loss of use of a member shall be for the proportionate loss or loss of use of the member.

(d) Other cases: A permanent partial disability not scheduled in subsection (c) hereof shall be apportioned to the body as a whole, which shall have a value of 450 weeks, and there shall be paid compensation to the injured employee for the proportionate loss of use of the body as a whole resulting from the injury.

(f) Second injury: In cases of permanent disability arising from a subsequent accident, where a permanent disability existed prior thereto;

(1) If an employee receive a permanent injury after having previously sustained another permanent injury in the employ of the same employer, for which he is receiving compensation, compensation for the subsequent injury shall be paid for the healing period and permanent disability by extending the period and not by increasing the weekly amount. When the previous and subsequent injuries received result in permanent total disability, compensation shall be payable for permanent total disability, but the sum total of compensation payable for previous and subsequent injuries shall not exceed 450 weeks or twelve thousand five hundred dollars ($12,500.00)."[1]

It is not difficult to understand how the Commission fell into error of law in this case. Permanent *total* disability caused by the loss of both hands, arms, legs, eyes or any two of them; or permanent *total* disability as determined by the facts in other cases, as set out and provided for in § 81-1313 (a), supra, amounts

---

[1] In 1969 the Act was amended to increase the compensation benefits and in other respects not germane to this opinion. See same section Ark. Stat. Ann. 1969 Supp.

to the same in dollars and cents, as well as in period of time over which payment is to be made, as a 100% permanent (partial) disability, when apportioned to the body as a whole under § 81-1313 (d). It will be noted that *permanent total* disability is only mentioned in § 81-1313 (a), and loss of use of the *body as a whole* is only mentioned in § 81-1313 (d) which does not mention *total* disability at all.

There is, of course, a considerable difference between permanent *partial* disability and permanent *total* disability. A permanent *partial* disability may be as low as 1% if it is permanent, and *total* disability must be 100% whether it is temporary or permanent. So, for all practical purposes, a permanent *partial* disability from an injury which is not scheduled in subsection (c), and therefore must be apportioned to the body as a whole under subsection (d), becomes the same as permanent *total* disability, when, and *only when,* the disability from such unscheduled injury reaches 100%.

It must be remembered that an injured employee is entitled to compensation for the scheduled injuries under subsection (c) whether his earning capacity is affected or not, and total loss of use of the member is the same as loss by amputation under subsection 21; and under subsection 22 partial loss, or partial loss of the use, of a member shall be for the proportionate percentage of the actual and total loss. The same rule applies when the permanent partial disability results from an injury *not scheduled* under subsection (c) and is apportioned to the body as a whole under (d).

Anything less than *total* disability is not compensable under § 81-1313 (a). A *total loss* of any two of the designated members under this subsection only gives rise to a *presumption of permanent* total disability; (not a permanent disability to be apportioned to the body as a whole) but a permanent total disability, rebuttable only by clear and convincing proof to the contrary. In all other cases *permanent* total disability shall be determined in accordance with the facts.

Permanent *partial* disability is only provided for

under subsection (c) and subsection (d). Permanent *partial* disability under (c) is the disability caused by the injuries scheduled under (c) and resulting in partial loss, or partial loss of the use, of the members set out in subsection (c). Permanent *partial* disability *not scheduled* under (c) must be apportioned to the body as a whole under (d). We must keep in mind that we are considering here the kind of disability for which a claimant is entitled to compensation whether his earning capacity is affected or not.

The appellee cites *Garner* v. *American Can Co.,* 246 Ark. (April 28, 1969), 440 S. W. 2d 210, as decisive of the issues in the case at bar. In that case the claimant Garner sustained a severe injury to his left hand requiring bone graft. The graft material was taken from the right leg and he developed thrombophlebitis secondary to the removal of the bone graft. He also developed multiple pulmonary emboli *(blood clots in the lungs)* which required ligation of the large blood vessels (the opinion does not say where). Following the ligation, and apparently as a partial result of it, he developed deep venous thrombosis in both legs. Thus, Mr. Garner wound up with his disability related to the condition of his hand, both legs and his lungs. His permanent disability might well have been apportioned to his body as a whole because the disability caused by the blood clots in his veins, and certainly those in his lungs, were not scheduled under subsection (c). As a matter of fact, however, we only know that Mr. Garner was paid the maximum benefits, only part of which was for *permanent partial* disability. It is not set out in *Garner* whether the permanent disability was apportioned to his hand and legs under subsection (c), or whether it was apportioned to his body as a whole and paid under subsection (d). The real problem in the *Garner* case concerned a subsequent injury to his *left* leg and continued liability for medical treatment of the bone graft lesion on the *right* leg. In any event, our decision in *Garner* is of no assistance in the case at bar.

We thoroughly recognize the apparent inequitable gap between say an 80% permanent partial disability to both hands of a common laborer which would entitle

him to 240 weeks of compensation under subsection (c), and say a 60% permanent partial disability because of a back injury which would entitle him to 270 weeks compensation when apportioned to the body as a whole as required under subsection (d). A musician might be totally disabled from playing an instrument by the loss, or partial loss of the use, of one hand or even one finger and have very little actual disability following a back injury resulting in a 60% permanent partial disability to his body as a whole. It might appear logical to apportion the musician's disability in the loss of a finger to his body as a whole when it would appear ridiculous to follow the same procedure in the case of a common laborer or an attorney.

The answer, of course, is that the apparent gap is closed by relating the scheduled injuries to loss in earning capacity under the definition of disability appearing in § 81-1302 (e). A 50% permanent partial disability in both hands entitles the injured employee to 150 weeks of compensation. If the employee's earning capacity has been diminished or destroyed by such permanent partial disability, he may be entitled to workmen's compensation benefits even to the extent of permanent *total* disability. *McNeely* v. *Clem Mill & Gin Co.,* 241 Ark. 498, 409, S. W. 2d 502. In such event the "body as a whole" does not enter the picture at all.

By the same token, if an employee sustains an unscheduled injury resulting in a 50% permanent partial disability to the body as a whole, he is entitled to 225 weeks of compensation. If his earning capacity is diminished or destroyed by such permanent partial disability, he too may be entitled to more than 225 weeks compensation even to the extent of the maximum payable for permanent and total disability. *Glass* v. *Edens,* 233 Ark. 786, 346 S. W. 2d 685; *Wilson & Co.* v. *Christman,* 244 Ark. 132, 424 S. W. 2d 863.

Medical specialists should be more qualified than the Commission in estimating permanent partial disability (functional) because of scheduled injuries under subsection (c), or to the body as a whole under subsection (d). But the Commission should be far more

competent than medical specialists in estimating the effect the injury has on the employee claimant's earning capacity. Thus, if an employee loses the sight of one eye, and the use of one arm and one leg, he is *presumed* to be permanently and totally disabled. But if the presumption is overcome by clear and convincing evidence to the contrary, he is still entitled to the maximum of 450 weeks of compensation under schedule (c). If these same injuries were apportioned to his body as a whole, he would have the burden of proving that he has a 100% permanent partial disability to his body as a whole in order to receive compensation for the maximum period of 450 weeks.

In the case at bar the Commission recognized the separate classification of disabilities under subsections (c) and (d) by the separate awards of 25% to the left arm under subsection (c) and 60% to the body as a whole under subsection (d). Assuming that the combination of the two disabilities for the injuries scheduled under subsection (c) could properly be apportioned to the body as a whole under subsection (d), then the injuries to both arms would necessarily merge to constitute the disability to the body as a whole. The effect of the Commission's award was to properly apply subsection (c) to the disability caused by the injury to the left arm and then erroneously apply subsection (d) to the same scheduled injury causing the disability in the right arm, and apportion that disability to the body as a whole. Subsection (c) does not distinguish between the right and left arms. Injury to the right, as well as to the left arm, is a scheduled injury under subsection (c), and the total loss of both arms only creates a rebuttable presumption of permanent total disability under subsection (c). A permanent *partial* disability in both arms does not change either or both to disabilities not scheduled under subsection (c), and therefore apportionable to the body as a whole under subsection (d).

We now turn to the disposition we make of this case. This claim was presented, heard and determined on the theory that whatever permanent disability the claimant sustained as a result of the injuries to his arms was to be apportioned to his body as a whole.

This, as we have pointed out, was error. The evidence in the record would sustain a finding that the claimant is still totally disabled. He testified that he was unable to work at anything he knew how to do. He tried measuring logs and marking them with a chopping ax, but was unable to use the ax a full day. He attempted to operate a power mower but his hands swelled and he was unable to do so. The medical evidence was to the effect that he certainly would be unable to use a power saw a full eight hour day. He testified that he was unable to drive a truck in the log woods and he explained why. The claimant is a 53 year old Negro man with a seventh grade education. There is nothing else the claimant has done in a number of years except work in timber and preach. There is no evidence that he ever did receive anything in the way of remuneration for his preaching. There is substantial evidence that the claimant's earning capacity is nil at the present time, but there is also evidence that his condition is still improving.

It is true that there is medical evidence that Poe was able to drive a truck for short periods of time, but Poe says he is unable to hold the steering wheel of a log or billet truck when it runs over small logs and rough ground as is necessarily encountered in hauling billets or pulpwood. It is also true that Poe was a subcontractor and employed three other men to cut and skid logs and to cut them into pulpwood lengths. But Poe also testified that he drove his own truck and always put in a full days work as truck driver or doing what his employees were doing. He disposed of his equipment because he was physically unable to operate it and he was unable to make an income from the operation when he only supervised and did none of the actual work.

We conclude, therefore, that this case should be remanded to the workmen's compensation for a determination of the extent of Poe's permanent partial disability to his left and right arms under the provisions of § 81-1313 (c) of the Workmen's Compensation Law, if his healing period has ended; and for a determination of the extent of his loss in earning capacity if he has

994

suffered a permanent loss in his earning capacity. The judgment of the trial court is reversed and this cause is remanded with directions to remand to the Commission.

Reversed and remanded.

BYRD, J., dissents.