ALUMINUM COMPANY OF AMERICA
*v.* John A. WILSON

77-244                                        559 S.W. 2d 710

Opinion delivered January 9, 1978
(In Banc)

*Rose, Nash, Williamson, Carroll, Clay & Giroir,* by: *Phillip Carroll,* for appellant.

*Silas H. Brewer, Jr.,* for appellee.

CARLETON HARRIS, Chief Justice. On July 12, 1972, appellee, John A. Wilson, suffered a compensable injury while employed by Aluminum Company of America, appellant herein, the injury being to both knees. Temporary total benefits were paid from July 13, 1972, until April 5, 1973, and from that time until August 16, 1975, permanent partial disability benefits were paid for a period of 123.75 weeks; in addition, all medical expenses were paid. Dr. J. Shelby Duncan of Benton, Arkansas, was appellee's physician and on April 6, 1973, Dr. Duncan reported as follows:

"I feel at this point he has reached the end of his healing period and feel that his permanent physical impairment is in the neighborhood of 25 to 30 per cent to the knees bilaterally. However, since this is a bilateral injury and one knee has affected the rehabilitation of the other, I feel that this rating should be to the body as a whole rather than to the individual extremities. Utilizing the Manual for Orthopedic Surgeons in evaluating permanent physical impairment prepared by the American Academy of Orthopedic Surgeons as my guide, I would estimate his permanent physical impairment to be in the range of 25 to 30 per cent to the body as a whole."

The doctor had previously stated on March 6 that Wilson would not be able to go up and down ladders very easily "and I think if he returns to any type of manual labor that he is going to have troubles."

Appellee accepted voluntary retirement on April 1, 1973, five days before he reached the end of his healing period.

On December 5, 1975, a hearing was held before an administrative law judge who decided that Wilson was permanently and totally disabled and appellant was directed to pay to him permanent total disability benefits commencing on April 6, 1973 (accrued benefits to be paid in a lump sum), such payments to continue pursuant to the Arkansas Workmen's Compensation Act. On appeal to the Full Commission, that tribunal agreed with the administrative law judge, and in discussing the claim, mentioned that claimant had only a fourth grade education and can barely read or

write; his work experience included log cutting, miner, railroad worker, and employment by Alcoa as a janitor, a scaler operating large air guns, and as a "buggy driver" and "utility" worker. The injury was occasioned when a large valve "exploded" knocking Wilson from a large stand in such a manner that he hit on the concrete on both knees. It was pointed out that Dr. Duncan's examination had revealed bilateral complete traumatic rupture of the quadriceps tendon, requiring surgery on both knees, and that approximately eight months later Dr. Duncan had made the remark, heretofore mentioned, that any return to manual labor would lead to further troubles. The Commission stated:

> "The evidence in this case reflects that we are concerned with two scheduled injuries in that both of the claimant's knees have sustained physical impairment [pointing out the testimony of Dr. Duncan previously quoted] . . .

> We agree with Dr. Duncan that the injuries should not be treated as separate scheduled injuries and, as such, the physical impairment being represented by the sum of physical impairment to both knees. We adopt the multiple impairment principle which recognizes the common-sense fact that, when two or more scheduled injuries occur together, the disabling effect may be far greater than the arithmetical total of the scheduled allowances added together. *Larson Workmen's Compensation* (desk Edition, Section 58.20). The basis for the principle applied to multiple injuries is partially explained in Dr. Duncan's report which indicates that the rehabilitation of one member is affected by injury to the other member.

> However, for the purpose of evaluating claimant's permanent disability, we find it unnecessary to apply the multiple injury principle. Dr. Duncan rates the physical impairment at 25 to 30 percent to the knees bilaterally and transposes that rating to a body as a whole rating of 25 to 30 percent . . ."

The award of the administrative law judge was upheld and the Commission, under the authority of Act 1227 of 1975,

directed that claimant's attorney receive an additional fee of $100.00. The Saline County Circuit Court affirmed the Commission and from the judgment so entered, appellant brings this appeal. For reversal, it is first asserted that the award of permanent and total disability benefits is not supported by any substantial evidence, and it is then contended that the award of the additional $100.00 attorney's fee to claimant's attorney constituted error.

Appellant contends that Wilson is not unemployed because of the debility of his knees, but rather because he voluntarily chose to retire. It is pointed out that Wilson, 68 years of age, is ambulatory, hunts[1] and fishes, drives a car, and attends church.

We hardly consider this comparable to climbing, or kneeling, which duties were required by his service as a utility man for Alcoa, duties which were incumbent each workday.[2]

While it is true that under the union contract with the company, retirement was not compulsory at age 65, Wilson testified that the personnel manager at Alcoa urged him to retire, and he further stated, "I couldn't work and they had done told me I wasn't gonna come back to work." Certainly, it would have been difficult for Wilson, crippled as he was, with a fourth grade education, and past retirement age, to obtain other employment when his entire work experience throughout his life had been manual labor. Dr. Duncan pointed out that the injury being bilateral, meaning that the injury to each knee affected recovery and rehabilitation of the other, prevented the type of a recovery that could have been expected with injury only to one knee. As previously mentioned, the doctor stated that, in his view, if Wilson returned to any type of manual labor, "he is going to have troubles." Appellant argues that the two scheduled knee injuries cannot be "tied" together so as to apportion disability to the body as a whole, and it points out that we have held that a scheduled injury cannot be apportioned to the body as a whole in deter-

---

[1]Wilson described his hunting as walking a short distance, and sitting under a tree.

[2]The record reflects that Wilson, up until the time he was injured (when he was 64 years of age), was in good health, working everyday, and had not missed a day of work in four or five years.

mining the extent of permanent partial disability. See *Anchor Construction Co. v. Rice,* 252 Ark. 460, 479 S.W. 2d 573. But here, we are not dealing with permanent partial disability; rather, we are dealing with permanent total disability.

More than ten years ago, in *McNeely v. Clem Mill & Gin Co., et al,* 241 Ark. 498, 409 S.W. 2d 502, this court said:

"The principal question is whether an employee who suffers a scheduled injury which proves to be totally and permanently disabling is entitled only to the restricted compensation specified for the scheduled injury or to the greater benefits provided for total and permanent disability. The commission took the more liberal view, but its award was set aside by the circuit court. We agree with the commission.

The claimant, at the time of his injury in 1961, was a 50-year-old manual laborer, unable to read or write. His accident resulted in the total loss of the use of his right leg below the knee. That is a scheduled injury, for which he received compensation for the full statutory period of 125 weeks. Ark. Stat. Ann. § 81-1313 (c) (4) and (21) (Repl. 1960). When the present claim for additional benefits was heard the claimant could walk only with the aid of crutches and a leg brace. The commission found, upon proof that we consider to be substantial, that McNeely was totally disabled. Upon that finding the commission ordered that the payment of compensation be continued."

Likewise, in *Anchor Construction Co. v. Rice,* supra, we stated:

"As we view the record the Commission properly found that there was no permanent disability to any part of the body except the left lower extremity below the hip. Of course this reduces the permanent injuries to a scheduled injury under Ark. Stat. Ann. § 81-1313 (c). In *Moyers Brothers v. Poe,* 249 Ark. 984, 462 S.W. 2d 862 (1971), we held that an injury scheduled under Ark. Stat. Ann. § 81-1313 (c) could not be apportioned to the body as a whole in determining the extent of permanent

partial disability as distinguished from permanent total disability. [Citing *McNeely*]

Both of these cases were mentioned in *Johnson Construction Co.* v. *Noble,* 257 Ark. 957, 521 S.W. 2d 63, where this court commented:

"The appellants cite *McNeely* v. *Clem Mill & Gin Co.,* 241 Ark. 498, 409 S.W. 2d 502, where we first held that benefits for scheduled injuries under Ark. Stat. Ann. § 81-1313 (c) (Repl. 1960) are not limited to the schedule when the scheduled injury *renders the claimant totally disabled.* The appellants then cite *Anchor Const. Co.* v. *Rice,* 252 Ark. 460, 479 S.W. 2d 573, wherein we held that where the injury is to a scheduled member, the Commission cannot award disability benefits greater than the rating for permanent partial physical impairment provided in the schedule *unless the disability is permanent and total . . .* "

We conclude that there was substantial evidence to support the award.

As to the second point, we agree with appellant. Ark. Stat. 81-1332 sets out the fees for legal services in compensation cases, and the General Assembly of 1975, in its extended session of 1976, enacted Act 1227 which, *inter alia,* added the following paragraph:

"In addition to the fees herein provided, if the claimant prevails on appeal, the attorney for the claimant shall be entitled to an additional fee at the full Commission and Supreme Court levels, such additional fee to be paid by the employer or carrier, and such fee to be set by the Commission and/or Supreme Court. The maximum fees allowable hereunder shall be the sum of One Hundred Dollars ($100) on appeals to the full Commission from a decision of an administrative law judge, and the sum of Two Hundred and Fifty Dollars ($250) on appeals to the Arkansas Supreme Court from a decision of the Commission. In determining the amount of fees, the Court shall take into consideration the nature, length, and complexity of the services performed, and

the benefits resulting therefrom to the compensation beneficiary."

The Commission awarded the attorney for appellee an additional $100, this amount relating to the appeal from the administrative law judge to the Commission, and being the maximum authorized by that legislation. Appellant argues that this fee should not be allowed inasmuch as the attorney for appellee did not file a brief with the Commission, nor perform any additional services in connection with the appeal. This point is not mentioned by appellee in his brief.

We recognize that the amendatory provision, on its face, appears to only require this court, on appeals to it, to, in fixing fees, take the other factors mentioned into consideration, i.e., there is no precise language requiring that the Commission do likewise in setting its fee on an appeal from the administrative law judge.

However, it appears that there was a perfectly obvious reason in omitting explicit language, viz, the requirement that the Commission consider the various factors such as nature, length and complexity of services performed, for this requirement is *already* a part of the very section referred to. The amendment is not really a separate act, but is to be read in conjunction with the other provisions of § 81-1332. For that matter, the amendment itself uses the term "maximum fees allowable," and the word "maximum" certainly means that the Commission has a right to award a lesser sum.

We have heretofore held that in fixing a fee, the statute requires the Commission to take into consideration the nature, length and complexity of the services performed, as well as the benefits resulting to the claimant. *Aluminum Co. of America* v. *Henning,* 260 Ark. 699, 543 S.W. 2d 480.

It is recognized that the maximum amount ($100) is not a large award, and accordingly would not require a detailed showing as to time spent or the complexities of the services rendered, but we do think that there must be a showing of some additional service — and the Commission should set out the basis for any allowance made. There is here no showing of what services were rendered in behalf of appellee by his

attorney on the appeal from the administrative law judge, and accordingly we reverse on Point 2.

It is so ordered.

HOLT, HICKMAN and HOWARD, JJ., dissent as to the reversal.